UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

PROCOM AMERICA, LLC,                                    Case No.: 8:20-bk-03522-CPM

      Debtor.                                          Chapter 7 case

_____/


DOUGLAS N. MENCHISE, Chapter 7 Trustee,

      Plaintiff,

v.                                                      Adv. Pro. No.: _____

Air France-KLM S.A., a/k/a Air France-KLM
Group; Chateau La Cheneviere; DC Trails, Inc.; Les
Voitures Henri Pavard; Hilton London Wembley;
Hotel de l'Opera Hanoi MGallery by Sofitel; Hotel
Villa Lara; Ibis Bayeux Port-en-Bessin; Ibis Styles
Caen Centre Gare; Mercure Caen Centre Port de
Plaisance Hotel; Mercure Omaha Beach Hotel;
Novotel Bayeux; Outrigger Reef Waikiki Beach
Resort; Sofitel Saigon Plaza; Star Inn Hotel
Premium Munchen Domagkstrasse by Quality;
Hilton Worldwide Holdings, Inc.; Accor S.A.; KSL
Resorts, Inc.; and Choice Hotels International, Inc.,

      Defendants.

_____/

### COMPLAINT TO AVOID AND RECOVER FRAUDULENT
### AND PREFERENTIAL TRANSFERS AND FOR DAMAGES

Douglas N. Menchise, not individually but solely in his capacity as the chapter 7 trustee

(the "**Trustee**"), by and through his undersigned counsel and pursuant to title 11 of the United

States Code, sections 544, 547, 548, and 550, hereby files this complaint to avoid and recover

certain fraudulent and preferential transfers and damages, and respectfully alleges as follows:

## NATURE OF ACTION

1.      This is an adversary proceeding seeking the avoidance and recovery of certain preferential and fraudulent transfers and damages.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding pursuant to title 28 of the United States Code, sections 157(b) and 1334(b).

3.      Venue is proper in this district pursuant to title 28 of the United States Code, section 1409(a).

4.      This adversary proceeding arises under the Bankruptcy Code and is related to the above captioned bankruptcy case of Procom America, LLC (the "**Debtor**"), case number 8:20-bk-03522-CPM, now pending before this Court.

5.      This proceeding constitutes a "core" proceeding within the meaning of title 28 of the United States Code, section 157(b), and this Court may enter final orders for the matters contained herein.

6.      To the extent that any claim asserted herein constitutes a non-core proceeding and/or if this Court lacks constitutional authority to enter a final judgment on any claim asserted herein, the Trustee hereby consents to the entry of final orders and judgment by this Court pursuant to Federal Rule of Bankruptcy Procedure 7008.

## PARTIES

7.      The plaintiff of this proceeding is Douglas N. Menchise, the chapter 7 trustee appointed to administer the estate in the above captioned bankruptcy case.

8.      Upon information and belief, Defendant Air France-KLM S.A., a/k/a Air France-KLM Group ("**Air France**") is a Franco-Dutch airplane holding company, incorporated under the laws of France, and headquartered at the Charles de Gaulle Airport in the commune of Tremblay-en-France, France.

9.      Upon information and belief, Defendant Chateau La Cheneviere ("**Chateau La Cheneviere**") is a French limited liability company headquartered at Escures-Commes 14520, Port en Bessin, Normandy, France.  Upon information and belief, Chateau La Cheneviere provides overnight accommodations for travelers, tourists, and others.

10.     Upon information and belief, Defendant DC Trails, Inc. ("**DC Trails**"), is a Virginia corporation headquartered at 8025 Mims St., Lorton, Virginia 22079.  Upon information and belief, DC Trails provides transportation via busses and other vehicles for travelers, tourists, and others.

11.     Upon information and belief, Defendant Les Voitures Henri Pavard ("**Henri Pavard**") is a French company headquartered at Rue De Metiers, Caen, Normandy, 14000, France.  Upon information and belief, Henri Pavard provides transportation via limousines and other vehicles for travelers, tourists, and others.

12.     Upon information and belief, Defendant Hilton London Wembley ("**Hilton Wembley**") is a hotel with its principal place of business located at Lakeside Way, Webmley, HA9 0BU, United Kingdom.  Upon information and belief, Hilton Wembley is owned and/or operated

by Hilton Worldwide Holdings, Inc.  Upon information and belief, Hilton Wembley provides overnight accommodations for travelers, tourists, and others.

13.     Upon information and belief, Hilton Worldwide Holdings, Inc. ("**Hilton Worldwide**"), is a Delaware corporation headquartered at 7930 Jones Branch Drive, McLean, Virginia 22102.

14.     Upon information and belief, Defendant Hotel de l'Opera Hanoi MGallery by Sofitel ("**Hotel de l'Opera**") is a hotel with its principal place of business located at 29 Trang Tien Street, Hoan Kiem District, 10000 Hanoi, Vietnam.  Upon information and belief, Hotel de l'Opera is operated by Sofitel, which is owned and/or operated by Accor S.A.  Upon information and belief, Hotel de l'Opera provides overnight accommodations for travelers, tourists, and others.

15.     Upon information and belief, Accor S.A. ("**Accor**") is a French limited liability company headquartered at 82 Rue de Henri Farman, Issy-Les-Moulineaux, Ile-de-France.

16.     Upon information and belief, Defendant Hotel Villa Lara is a boutique hotel with its principal place of business located at 6 Place de Quebec, 14400 Bayeux, France.  Upon information and belief, Hotel Villa Lara provides overnight accommodations for travelers, tourists, and others.

17.     Upon information and belief, Defendant Ibis Bayeux Port-en-Bessin ("**Ibis Bayeux**") is a hotel with its principal place of business located at 12 Quai Baron Gerard, 14520 Port-en-Bessin, France.  Upon information and belief, Ibis Bayeux is owned and/or operated by Accor.  Upon information and belief, Ibis Bayeux provides overnight accommodations for travelers, tourists, and others.

18.     Upon information and belief, Defendant Ibis Styles Caen Centre Gare ("**Ibis Styles**") is a hotel with its principal place of business located at 52 Quai Amiral Hamelin, 14000

Caen, France.  Upon information and belief, Ibis Styles is owned and/or operated by Accor.  Upon information and belief, Ibis Styles provides overnight accommodations for travelers, tourists, and others.

19.     Upon information and belief, Defendant Mercure Caen Centre Port de Plaisance Hotel ("**Mercure Port de Plaisance**") is a hotel with its principal place of business located at 1 Rue de Courtonne, CS 43086, Caen Cedex 2, 14000 Caen, France.  Upon information and belief, Mercure Port de Plaisance is owned and/or operated by Accor.  Upon information and belief, Mercure Port de Plaisance provides overnight accommodations for travelers, tourists, and others.

20.     Upon information and belief, Defendant Mercure Omaha Beach Hotel ("**Mercure Omaha Beach**") is a hotel with its principal place of business located at Chemin du Colombier, 14520 Port en Bessin, France.  Upon information and belief, Mercure Omaha Beach is owned and/or operated by Accor.  Upon information and belief, Mercure Omaha Beach provides overnight accommodations for travelers, tourists, and others.

21.     Upon information and belief, Defendant Novotel Bayeux is a hotel with its principal place of business located at 117 Rue Saint Patrice, Rond Point de Vaucelles, 14400 Bayeux, France.  Upon information and belief, Novotel Bayeux is owned and/or operated by Accor.  Upon information and belief, Novotel Bayeux provides overnight accommodations for travelers, tourists, and others.

22.     Upon information and belief, Defendant Outrigger Reef Waikiki is a hotel with its principal place of business at 2169 Kalia Road, Honolulu, Hawaii 96815.  Upon information and belief, Outrigger Reef Waikiki is owned and/or operated by KSL Resorts, Inc.  Upon information and belief, Outrigger Reef Waikiki provides overnight accommodations for travelers, tourists, and others.

23.     Upon information and belief, KSL Resorts, Inc. ("**KSL Resorts**") is a Delaware corporation headquartered at 18575 Jamboree Road, Suite 500, Irvine, California 92612.

24.     Upon information and belief, Defendant Sofitel Saigon Plaza ("**Saigon Plaza**") is a hotel with its principal place of business located at 17 Le Duan Boulevard, District 1, 700000 Ho Chi Minh City, Vietnam.  Upon information and belief, Saigon Plaza is owned and/or operated by Accor.  Upon information and belief, Saigon Plaza provides overnight accommodations for travelers, tourists, and others.

25.     Upon information and belief, Defendant Star Inn Hotel Premium Munchen Domagkstrasse by Quality ("**Star Inn Hotel**") is a hotel with its principal place of business located at Weimarer Strasse 2, Munich, 80807, Germany.  Upon information and belief, Star Inn Hotel is owned and/or operated by Choice Hotels International, Inc.  Upon information and belief, Star Inn Hotel provides overnight accommodations for travelers, tourists, and others.

26.     Upon information and belief, Choice Hotels International, Inc. ("**Choice Hotels**") is a Delaware corporation headquartered at 1 Choice Hotels Circle, Suite 400, Rockville, Maryland 20850.

27.     Air France, Chateau La Cheneviere, DC Trails, Henri Pavard, Hilton Wembley, Hotel de l'Opera, Hotel Villa Lara, Ibis Bayeux, Ibis Styles, Mercure Port de Plaisance, Mercure Omaha Beach, Novatel Bayeux, Outrigger Reef Waikiki, Saigon Plaza, Star Inn Hotel, Hilton Worldwide, Accor, KSL Resorts, and Choice Hotels shall be collectively referred to as "**Defendants**."

## FACTUAL BACKGROUND

28.      The Debtor and related entities operated a tour company offering various trips or tours to a series of World War II and other battle themed sites throughout Europe, Asia, and North America.

29.      As part of the Debtor's business model, customers would submit payment to the Debtor and/or its related entities for all-inclusive tour packages.  The Debtor and/or its related entities would, in turn, remit payments and place deposits with various vendors, including the Defendants, that would provide, *inter alia*, transportation and overnight accommodations for customers' vacations.

30.      Specifically, upon information and belief, and based upon the discovery the Trustee has been able to complete to date, the Debtor either directly, or indirectly through its related entities, including Procom Tours, LLC, Procom Consulting KFT a/k/a Procom Consulting Utazasi Iroda KFT, and Procom Investments KFT (individually and collectively, the "**Related Entities**"), which are believed to be mere extensions of the Debtor, transferred certain deposits and other payments to the Defendants.

31.      On May 1, 2020 (the "**Petition Date**"), certain of the Debtor's creditors filed an involuntary petition under chapter 7 of title 11 of the United States Code, sections 101 *et seq*. (the "**Bankruptcy Code**"), against the Debtor.  *See* Doc. No. 1.

32.      On May 7, 2020, the Debtor filed its *Consent to Order for Relief*, consenting to the entry of an order for relief in the involuntary case.  *See* Doc. No. 7.

33.      On May 8, 2020, Larry S. Hyman, as assignee for the benefit of creditors of the Debtor, filed his *Consent to Order for Relief*, consenting to the entry of an order for relief in the involuntary case.  *See* Doc. No. 8.

34.     On May 8, 2020, this Court entered its *Order for Relief*, granting, *inter alia*, relief under section 303(h) of the Bankruptcy Code.  *See* Doc. No. 9.

35.     Also on May 8, 2020, Douglas N. Menchise was appointed as the chapter 7 trustee in the above captioned bankruptcy case.  *See* Doc. No. 10.

36.     On June 18, 2020, the Court entered its *Order Approving Trustee's Application of Employment of Shumaker, Loop & Kendrick, LLP as Special Counsel (Doc. 93) Effective as of June 4, 2020*.  *See* Doc. No. 97.

37.     The Trustee has incurred fees and costs in investigating and bringing this adversary proceeding, which are recoverable under applicable law.

38.     The Trustee brings the allegations and claims in this Complaint based upon the information and belief currently available to the Trustee from the limited discovery that the Trustee has been able to complete as of the date of this filing.  The Trustee reserves any and all rights under applicable law and in equity to amend and/or supplement this Complaint as the Trustee's investigation and discovery continue.

## COUNT I:
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
### (*Against Air France*)

39.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

40.     This is a cause of action to avoid constructive fraudulent transfers against Defendant Air France pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

41.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

42.     Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Air France:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/11/2020 | 400,800 HUF | 400,800 HUF |
| 2/17/2020 | 75,700 HUF | 75,700 HUF |
| 2/24/2020 | 241,900 HUF | 241,900 HUF |
| 3/4/2020 | 28,800 HUF | 28,800 HUF |
| **TOTAL** | | **747,200 HUF** |

43.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred not less than 747,200 Hungarian Forint (upon information and belief, approximately $2,116.76) within four years of the Petition Date.

44.     The above-described transfers to Air France constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

45.     Each of the transfers to Air France described herein may be avoided due to the following badges of fraud:

    a.     The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

    b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

  c. The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

  d. The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

46. The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

47. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

48. Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Air France.

49. The Debtor did not receive reasonably equivalent value for the above-described transfers to Air France because the tickets for the flights purchased with the transfers were never provided to or used by the Debtor or its customers.

50. Even if the above-described transfers to Air France are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Air France (i) finding that all or part of the above-described

transfers from the Debtor to Air France were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

### COUNT II:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (*Against Air France*)

51.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

52.     This is a cause of action to avoid constructive fraudulent transfers against Air France pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

53.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Air France:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/11/2020 | 400,800 HUF | 400,800 HUF |
| 2/17/2020 | 75,700 HUF | 75,700 HUF |
| 2/24/2020 | 241,900 HUF | 241,900 HUF |
| 3/4/2020 | 28,800 HUF | 28,800 HUF |
| **TOTAL** | | **747,200 HUF** |

54.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred not less than 747,200 Hungarian Forint (upon information and belief, approximately $2,116.76) within two years of the Petition Date.

55.     Each of the above-described transfers to Air France constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

56.     Further, each of the above-described transfers to Air France may be avoided because each of the following are met, as described in more detail herein:

a.   The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.   The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.   The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.   The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

57.   Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

58.   Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Air France.

59.   The Debtor did not receive reasonably equivalent value for the above-described transfers to Air France because the tickets for the flights purchased with the transfers were never provided to or used by the Debtor or its customers.

60.   Even if the above-described transfers to Air France are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Air France (i) finding that all or part of the above-described transfers from the Debtor to Air France were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT III:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO**
**11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES**
(*Against Chateau La Cheneviere*)

61.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

62.     This is a cause of action to avoid constructive fraudulent transfers against Defendant Chateau La Cheneviere pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

63.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

64.     Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Chateau La Cheneviere:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/1/2019 | 25% Deposit 5,125.75 EUR | 20,503 EUR |
| 9/10/2019 | 50% Deposit 10,605 EUR | 21,210 EUR |
| 3/5/2020 | Final Deposit 707 EUR | 707 EUR |
| **TOTAL** | | **Between 42,420 EUR and 16,437.75 EUR** |

65.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Chateau La Cheneviere between 16,437.75 Euros (upon information and belief, approximately $17,641.98) and 42,420 Euros (upon information and belief, approximately $45,527.69) within four years of the Petition Date.

66.     The above-described transfers to Chateau La Cheneviere constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

67.     Each of the transfers to Chateau La Cheneviere described herein may be avoided due to the following badges of fraud:

a.      The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

68.     The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

69.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

70.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Chateau La Cheneviere.

71.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Chateau La Cheneviere because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

72.     Even if the above-described transfers to Chateau La Cheneviere are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Chateau La Cheneviere (i) finding that all or part of the above-described transfers from the Debtor to Chateau La Cheneviere were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

### COUNT IV:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
#### (*Against Chateau La Cheneviere*)

73.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

74.     This is a cause of action to avoid constructive fraudulent transfers against Chateau La Cheneviere pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

75.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Chateau La Cheneviere:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/1/2019 | 25% Deposit<br>5,125.75 EUR | 20,503 EUR |
| 9/10/2019 | 50% Deposit<br>10,605 EUR | 21,210 EUR |
| 3/5/2020 | Final Deposit<br>707 EUR | 707 EUR |
| **TOTAL** | | **Between 42,420 EUR and 16,437.75 EUR** |

76.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Chateau La Cheneviere between 16,437.75 Euros (upon information and belief, approximately $17,641.98) and 42,420 Euros (upon information and belief, approximately $45,527.69) within two years of the Petition Date.

77.     Each of the above-described transfers to Chateau La Cheneviere constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

78.     Further, each of the above-described transfers to Chateau La Cheneviere may be avoided because each of the following are met, as described in more detail herein:

a.      The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

79.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

80.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Chateau La Cheneviere.

81.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Chateau La Cheneviere because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

82.    Even if the above-described transfers to Chateau La Cheneviere are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Chateau La Cheneviere (i) finding that all or part of the above-described transfers from the Debtor to Chateau La Cheneviere were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT V:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO**
**11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES**
(*Against DC Trails*)

83.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

84.     This is a cause of action to avoid constructive fraudulent transfers against Defendant DC Trails pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

85.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

86.     Upon information and belief, within four years of the Petition Date, the following transfer was made by the Debtor to DC Trails:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/13/2020 | $7,200 USD | $7,200 USD |
| **TOTAL** | | **$7,200 USD** |

87.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to DC Trails not less than $7,200 United States Dollars within four years of the Petition Date.

88.     The above-described transfer to DC Trails constitutes a transfer of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

89.     The transfer to DC Trails described herein may be avoided due to the following badges of fraud:

a.    The Debtor made the transfer without receiving reasonably equivalent value for such transfer;

b.    The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

c.    The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.    The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfer would cause the Debtor to incur, debts beyond its ability to pay as they became due.

90.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

91.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

92.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfer to DC Trails.

93.    The Debtor did not receive reasonably equivalent value for the above-described transfer to DC Trails because transportation services purchased with the transfer were never provided to or used by the Debtor or its customers.

94.     Even if the above-described transfer to DC Trails is considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant DC Trails (i) finding that all or part of the above-described transfer from the Debtor to DC Trails was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

## COUNT VI:
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (*Against DC Trails*)

95.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

96.     This is a cause of action to avoid constructive fraudulent transfers against DC Trails pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

97.     Upon information and belief, within two years of the Petition Date, the following transfer was made by the Debtor to DC Trails:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/13/2020 | $7,200 USD | $7,200 USD |
| **TOTAL** | | **$7,200 USD** |

98.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to DC Trails not less than $7,200 United States Dollars within two years of the Petition Date.

99.     The above-described transfer to DC Trails constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

100.    Further, the above-described transfer to DC Trails may be avoided because each of the following are met, as described in more detail herein:

      a.    The Debtor made such transfer without receiving reasonably equivalent value for such transfer;

      b.    The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

      c.    The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

      d.    The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfer would cause the Debtor to incur, debts beyond its ability to pay as they became due.

101.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

102.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to DC Trails.

103.    The Debtor did not receive reasonably equivalent value for the above-described transfer to DC Trails because the transportation services purchased with the transfer were never provided to or used by the Debtor or its customers.

104.     Even if the above-described transfers to DC Trails are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant DC Trails (i) finding that all or part of the above-described transfer from the Debtor to DC Trails was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT VII:**
**AVOIDANCE OF PREFERENTIAL TRANSFERS**
**PURSUANT TO 11 U.S.C. § 547(b)(4)(A)**
**(*Against DC Trails*)**

105.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

106.     This is a cause of action to avoid preferential transfers against DC Trails pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

107.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfer was made by the Debtor to or for the benefit of DC Trails:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/13/2020 | $7,200 USD | $7,200 USD |
| **TOTAL** | | **$7,200 USD** |

108.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to DC Trails not less than $7,200 United States Dollars during the 90-Day Preference Period.

109.    The above-described transfer to DC Trails constitutes a transfer of an interest in property of the Debtor.

110.    Further, the above-described transfer to DC Trails was made at a time when the Debtor was insolvent.

111.    The Trustee is entitled to the presumption of insolvency for the above-described transfer to DC Trails that was made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

112.    Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

113.    Alternatively, the above-described transfer to DC Trials was made on account of an antecedent debt.

114.    DC Trails was the initial transferee of the above-described transfer to DC Trails, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfer to DC Trails was made.

115.    Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant DC Trails (i) finding that all or part of the above-described transfer from the Debtor to DC Trails was a preferential transfer; (ii) avoiding such transfer for the

benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

## COUNT VIII:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
### (*Against Henri Pavard*)

116.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

117.    This is a cause of action to avoid constructive fraudulent transfers against Defendant Henri Pavard pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

118.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

119.    Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Henri Pavard:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/8/2020 | 25% deposit 343.75 EUR | 1,375 EUR |
| 1/8/2020 | 25% deposit 343.75 EUR | 1,375 EUR |
| 1/10/2020 | 25% deposit 343.75 EUR | 1,375 EUR |
| 1/17/2020 | 25% deposit 343.75 EUR | 1,375 EUR |
| 1/17/2020 | 25% deposit 343.75 EUR | 1,375 EUR |
| 3/6/2020 | 25% deposit 672.50 EUR | 2,690 EUR |
| 3/6/2020 | Final payment 3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment 3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment | 4,125 EUR |

| | 4,125 EUR | |
|---|---|---|
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| **TOTAL** | | **Between 28,050 EUR and 20,876.25 EUR** |

120.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Henri Pavard between 20,876.25 Euros (upon information and belief, approximately $22,405.64) and 28,050 Euros (upon information and belief, approximately $30,104.94) within four years of the Petition Date.

121.    The above-described transfers to Henri Pavard constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

122.    Each of the transfers to Henri Pavard described herein may be avoided due to the following badges of fraud:

   a.    The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

   b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

   c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.   The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

123.   The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

124.   Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

125.   Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Henri Pavard.

126.   The Debtor did not receive reasonably equivalent value for the above-described transfers to Henri Pavard because the transportation services purchased with the transfers were never provided to or used by the Debtor or its customers.

127.   Even if the above-described transfers to Henri Pavard are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Henri Pavard (i) finding that all or part of the above-described transfers from the Debtor to Henri Pavard were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT IX:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Henri Pavard*)

128.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs

1-38 of this Complaint as though fully set forth herein.

129.    This is a cause of action to avoid constructive fraudulent transfers against Henri

Pavard pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

130.    Upon information and belief, within two years of the Petition Date, the following

transfers were made by the Debtor to Henri Pavard:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/8/2020 | 25% deposit<br>343.75 EUR | 1,375 EUR |
| 1/8/2020 | 25% deposit<br>343.75 EUR | 1,375 EUR |
| 1/10/2020 | 25% deposit<br>343.75 EUR | 1,375 EUR |
| 1/17/2020 | 25% deposit<br>343.75 EUR | 1,375 EUR |
| 1/17/2020 | 25% deposit<br>343.75 EUR | 1,375 EUR |
| 3/6/2020 | 25% deposit<br>672.50 EUR | 2,690 EUR |
| 3/6/2020 | Final payment<br>3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment<br>3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| **TOTAL** | | **Between 28,050 EUR and 20,876.25 EUR** |

131.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Henri Pavard between 20,876.25 Euros (upon information and belief, approximately $22,405.64) and 28,050 Euros (upon information and belief, approximately $30,104.94) within two years of the Petition Date.

132.    Each of the above-described transfers to Henri Pavard constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

133.    Further, each of the above-described transfers to Henri Pavard may be avoided because each of the following are met, as described in more detail herein:

a.    The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

134.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

135.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Henri Pavard.

136.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Henri Pavard because the transportation services purchased with the transfers were never provided to or used by the Debtor or its customers.

137.     Even if the above-described transfers to Henri Pavard are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Henri Pavard (i) finding that all or part of the above-described transfers from the Debtor to Henri Pavard were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

### COUNT X:
### AVOIDANCE OF PREFERENTIAL TRANSFERS
### PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
(*Against Henri Pavard*)

138.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

139.     This is a cause of action to avoid preferential transfers against Henri Pavard pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

140.    Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Henri Pavard:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/6/2020 | 25% deposit<br>672.50 EUR | 2,690 EUR |
| 3/6/2020 | Final payment<br>3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment<br>3,055 EUR | 3,055 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| 3/6/2020 | Final payment<br>4,125 EUR | 4,125 EUR |
| **TOTAL** | | **Between 21,175 EUR and 19,157.50 EUR** |

141.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Henri Pavard between 19,157.50 Euros (upon information and belief, approximately $20,560.98) and 21,175 Euros (upon information and belief, approximately $22,726.28)  during the 90-Day Preference Period.

142.    The above-described transfers to Henri Pavard constitute transfers of an interest in property of the Debtor.

143.    Further, the above-described transfers to Henri Pavard were made at a time when the Debtor was insolvent.

144.    The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Henri Pavard that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

145.     Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

146.     Alternatively, the above-described transfers to Henri Pavard were made on account of an antecedent debt.

147.     Henri Pavard was the initial transferee of the above-described transfers to Henri Pavard, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Henri Pavard were made.

148.     Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Henri Pavard (i) finding that all or part of the above-described transfers from the Debtor to Henri Pavard were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

## COUNT XI:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
*(Against Hilton Wembley and Hilton Worldwide)*

149.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

150.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Hilton Wembley and Hilton Worldwide pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

151.    Upon information and belief, Defendant Hilton Worldwide is the parent company of and/or otherwise operates and/or manages Defendant Hilton Wembley.  Accordingly, upon information and belief, the transfers described herein were made either to Hilton Webley or Hilton Worldwide.

152.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

153.    Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Hilton Wembley and/or Hilton Worldwide:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/29/2019 | 10% deposit 198.80 GBP | 1,988 GBP |
| 7/12/2019 | 10% deposit 198.80 GBP | 1,988 GBP |
| 8/28/2019 | 10% deposit 772.80 GBP | 7,728 GBP |
| 2/4/2020 | 10% deposit 675.50 GBP | 6,755 GBP |
| 2/4/2020 | 10% deposit 552 GBP | 5,520 GBP |
| 2/4/2020 | 10% deposit 325.50 GBP | 3,255 GBP |
| 2/7/2020 | 70% deposit 30,586 GBP | 43,694.28 GBP |
| **TOTAL** | | **Between 70,928.28 GBP and 33,309.40 GBP** |

154.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hilton Wembly and/or Hilton Worldwide between 33,309.40 British Pound sterling (upon

information and belief, approximately $41,248.70) and 70,928.28 British Pound sterling (upon information and belief, approximately $87,834.04) within four years of the Petition Date.

155.    The above-described transfers to Hilton Wembley and/or Hilton Worldwide constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

156.    Each of the transfers to Hilton Wembley and/or Hilton Worldwide described herein may be avoided due to the following badges of fraud:

> a.    The Debtor made the transfers without receiving reasonably equivalent value for such transfers;
>
> b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;
>
> c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and
>
> d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

157.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

158.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

159.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hilton Wembley and/or Hilton Worldwide.

160.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Hilton Wembley and/or Hilton Worldwide because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

161.     Even if the above-described transfers to Hilton Wembley and/or Hilton Worldwide are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Hilton Wembley and Hilton Worldwide (i) finding that all or part of the above-described transfers from the Debtor to Hilton Wembley and/or Hilton Worldwide were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XII:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (*Against Hilton Wembley and Hilton Worldwide*)

162.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

163.     This a cause of action to avoid constructive fraudulent transfers against Defendants Hilton Wembley and Hilton Worldwide pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

164.    Upon information and belief, Defendant Hilton Worldwide is the parent company of and/or otherwise operates and/or manages Defendant Hilton Wembley.  Accordingly, upon information and belief, the transfers described herein were made either to Hilton Webley or Hilton Worldwide.

165.    Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Hilton Wembley and/or Hilton Worldwide:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/29/2019 | 10% deposit 198.80 GBP | 1,988 GBP |
| 7/12/2019 | 10% deposit 198.80 GBP | 1,988 GBP |
| 8/28/2019 | 10% deposit 772.80 GBP | 7,728 GBP |
| 2/4/2020 | 10% deposit 675.50 GBP | 6,755 GBP |
| 2/4/2020 | 10% deposit 552 GBP | 5,520 GBP |
| 2/4/2020 | 10% deposit 325.50 GBP | 3,255 GBP |
| 2/7/2020 | 70% deposit 30,586 GBP | 43,694.28 GBP |
| **TOTAL** | | **Between 70,928.28 GBP and 33,309.40 GBP** |

166.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hilton Wembly and/or Hilton Worldwide between 33,309.40 British Pound sterling (upon information and belief, approximately $41,248.70) and 70,928.28 British Pound sterling (upon information and belief, approximately $87,834.04) within two years of the Petition Date.

167.    Each of the above-described transfers to Hilton Wembley and/or Hilton Worldwide constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

168.     Further, each of the above-described transfers to Hilton Wembley and/or Hilton Worldwide may be avoided because each of the following are met, as described in more detail herein:

a.      The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

169.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

170.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hilton Wembley and/or Hilton Worldwide.

171.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Hilton Wembley and/or Hilton Worldwide because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

172.     Even if the above-described transfers to Hilton Wembley and/or Hilton Worldwide are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Hilton Wembley and Hilton Worldwide (i) finding that all or part of the above-described transfers from the Debtor to Hilton Wembley and/or Hilton Worldwide were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XIII:
## AVOIDANCE OF PREFERENTIAL TRANSFERS
## PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
### (*Against Hilton Wembley and Hilton Worldwide*)

173.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

174.     This is a cause of action to avoid preferential transfers against Defendants Hilton Wembley and Hilton Worldwide pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

175.     Upon information and belief, Defendant Hilton Worldwide is the parent company of and/or otherwise operates and/or manages Defendant Hilton Wembley.  Accordingly, upon information and belief, the transfers described herein were made either to Hilton Webley or Hilton Worldwide.

176.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Hilton Wembley and/or Hilton Worldwide:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/4/2020 | 10% deposit<br>675.50 GBP | 6,755 GBP |
| 2/4/2020 | 10% deposit<br>552 GBP | 5,520 GBP |
| 2/4/2020 | 10% deposit<br>325.50 GBP | 3,255 GBP |
| 2/7/2020 | 70% deposit<br>30,586 GBP | 43,694.28 GBP |
| **TOTAL** | | **Between 59,224.28 GBP and 32,139 GBP** |

177.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hilton Wembly and/or Hilton Worldwide between 32,139 British Pound sterling (upon information and belief, approximately $39,799.33) and 59,224.28 British Pound sterling (upon information and belief, approximately $73,340.39) during the 90-Day Preference Period.

178.     The above-described transfers to Hilton Wembley and/or Hilton Worldwide constitute transfers of an interest in property of the Debtor.

179.     Further, the above-described transfers to Hilton Wembley and/or Hilton Worldwide were made at a time when the Debtor was insolvent.

180.     The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Hilton Wembley and/or Hilton Worldwide that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

181.     Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

182.     Alternatively, the above-described transfers to Hilton Wembley and/or Hilton Worldwide were made on account of an antecedent debt.

183.     Hilton Wembley and/or Hilton Worldwide was the initial transferee of the above-described transfers to Hilton Wembley and/or Hilton Worldwide, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Hilton Wembley and/or Hilton Worldwide were made.

184.     Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Hilton Wembley and Hilton Worldwide (i) finding that all or part of the above-described transfers from the Debtor to Hilton Wembley and/or Hilton Worldwide were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

### COUNT XIV:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
(*Against Hotel de l'Opera and Accor*)

185.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

186.     This is a cause of action to avoid constructive fraudulent transfers against Defendants Hotel de l'Opera and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

187.   Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Hotel de l'Opera.  Accordingly, upon information and belief, the transfers described herein were made to either Hotel de l'Opera or Accor.

188.   Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

189.   Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Hotel de l'Opera and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/21/2020 | 50% deposit 47,940,000 VND | 95,880,000 VND |
| 3/6/2020 | Final balance 119,992,817 VND | 119,992,817 VND |
| **TOTAL** | | **Between  215,872,817  VND and 167,932,817 VND** |

190.   Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hotel de l'Opera and/or Accor between 167,932,817 Vietnamese Dongs (upon information and belief, approximately $6,844.62) and 215,872,817 Vietnamese Dongs (upon information and belief, approximately $8,798.57) within four years of the Petition Date.

191.   The above-described transfers to Hotel de l'Opera and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

192.   Each of the transfers to Hotel de l'Opera and/or Accor described herein may be avoided due to the following badges of fraud:

a.   The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

b.   The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.   The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.   The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

193.   The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

194.   Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

195.   Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hotel de l'Opera and/or Accor.

196.   The Debtor did not receive reasonably equivalent value for the above-described transfers to Hotel de l'Opera and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

197.     Even if the above-described transfers to Hotel de l'Opera and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Hotel de l'Opera and Accor (i) finding that all or part of the above-described transfers from the Debtor to Hotel de l'Opera and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XV:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Hotel de l'Opera and Accor*)

198.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

199.     This is a cause of action to avoid constructive fraudulent transfers against Defendants Hotel de l'Opera and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

200.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Hotel de l'Opera.  Accordingly, upon information and belief, the transfers described herein were made to either Hotel de l'Opera or Accor.

201.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Hotel de l'Opera and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 1/21/2020 | 50% deposit 47,940,000 VND | 95,880,000 VND |
| 3/6/2020 | Final balance 119,992,817 VND | 119,992,817 VND |

| TOTAL | Between 215,872,817 VND and 167,932,817 VND |
|---|---|

202.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hotel de l'Opera and/or Accor between 167,932,817 Vietnamese Dongs (upon information and belief, approximately $6,844.62) and 215,872,817 Vietnamese Dongs (upon information and belief, approximately $8,798.57)  within two years of the Petition Date.

203.    Each of the above-described transfers to Hotel de l'Opera and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

204.    Further, each of the above-described transfers to Hotel de l'Opera and/or Accor may be avoided because each of the following are met, as described in more detail herein:

a.    The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

205.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

206.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hotel de l'Opera and/or Accor.

207.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Hotel de l'Opera and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

208.     Even if the above-described transfers to Hotel de l'Opera and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Hotel de l'Opera and Accor (i) finding that all or part of the above-described transfers from the Debtor to Hotel de l'Opera and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XVI:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO**
**11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES**
(*Against Hotel Villa Lara*)

209.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

210.     This is a cause of action to avoid constructive fraudulent transfers against Defendant Hotel Villa Lara pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

211.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

212.     Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Hotel Villa Lara:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 11/20/2018 | 30% deposit<br>9,900 EUR | 33,000 EUR |
| 3/5/2019 | 30% deposit<br>3,000 EUR | 10,000 EUR |
| 6/13/2019 | Balance<br>77,778.40 EUR | 77,778.40 EUR |
| 1/28/2020 | 30% deposit<br>5,310 EUR | 17,700 EUR |
| 1/28/2020 | 30% deposit<br>5,490 EUR | 18,300 EUR |
| **TOTAL** | | **Between   156,778.40   EUR and 101,478.40 EUR** |

213.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hotel Villa Lara between 101,478.40 Euros (upon information and belief, approximately

$108,912.71) and 156,778.40 Euros (upon information and belief, approximately $168,263.99) within four years of the Petition Date.

214.     The above-described transfers to Hotel Villa Lara constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

215.     Each of the transfers to Hotel Villa Lara described herein may be avoided due to the following badges of fraud:

      a.      The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

      b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

      c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

      d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

216.     The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

217.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

218.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hotel Villa Lara.

219.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Hotel Villa Lara because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

220.     Even if the above-described transfers to Hotel Villa Lara are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Hotel Villa Lara (i) finding that all or part of the above-described transfers from the Debtor to Hotel Villa Lara were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XVII:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Hotel Villa Lara*)

221.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

222.     This is a cause of action to avoid fraudulent transfers against Hotel Villa Lara pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

223.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Hotel Villa Lara:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 11/20/2018 | 30% deposit<br>9,900 EUR | 33,000 EUR |
| 3/5/2019 | 30% deposit<br>3,000 EUR | 10,000 EUR |
| 6/13/2019 | Balance<br>77,778.40 EUR | 77,778.40 EUR |
| 1/28/2020 | 30% deposit<br>5,310 EUR | 17,700 EUR |
| 1/28/2020 | 30% deposit<br>5,490 EUR | 18,300 EUR |
| | **TOTAL** | **Between   156,778.40   EUR and**<br>**101,478.40 EUR** |

224.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Hotel Villa Lara between 101,478.40 Euros (upon information and belief, approximately $108,912.71) and 156,778.40 Euros (upon information and belief, approximately $168,263.99) within two years of the Petition Date.

225.    Each of the above-described transfers to Hotel Villa Lara constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

226.    Further, each of the above-described transfers to Hotel Villa Lara may be avoided because each of the following are met, as described in more detail herein:

    a.    The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

    b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

227.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

228.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Hotel Villa Lara.

229.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Hotel Villa Lara because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

230.    Even if the above-described transfers to Hotel Villa Lara are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Hotel Villa Lara (i) finding that all or part of the above-described transfers from the Debtor to Hotel Villa Lara were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XVIII:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO**
**11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES**
(*Against Ibis Bayeux and Accor*)

231.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

232.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Ibis Bayeux and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

233.    Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Ibis Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Ibis Bayeux or Accor.

234.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

235.    Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Ibis Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/3/2019 | 30% deposit<br>498.20 EUR | 1,660.68 EUR |
| 12/5/2019 | 30% deposit<br>274.24 EUR | 914.30 EUR |
| 2/5/2020 | 30% deposit<br>1,440.07 EUR | 4,800.24 EUR |
| 2/28/2020 | Final payment<br>1,501.77 EUR | 1,501.77 EUR |
| 3/5/2020 | Final payment<br>3,874.92 EUR | 3,874.92 EUR |
| 3/5/2020 | 30% deposit<br>1,321.11 EUR | 4,403.70 EUR |
| 3/10/2020 | 30% deposit<br>1,354.86 EUR | 4,516.20 EUR |
| **TOTAL** | | **Between 21,671.81 EUR and 10,265.17 EUR** |

236.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Ibis Bayeux and/or Accor between 10,265.17 Euros (upon information and belief, approximately $11,017.20) and 21,671.81 Euros (upon information and belief, approximately $23,259.49) within four years of the Petition Date.

237.     The above-described transfers to Ibis Bayeux and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

238.     Each of the transfers to Ibis Bayeux and/or Accor described herein may be avoided due to the following badges of fraud:

a.      The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

239.     The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

240.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

241.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Ibis Bayeux and/or Accor.

242.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Ibis Bayeux and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

243.     Even if the above-described transfers to Ibis Bayeux and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Bayeux and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

### COUNT XIX:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
#### (*Against Ibis Bayeux and Accor*)

244.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

245.     This is a cause of action to avoid constructive fraudulent transfers against Defendants Ibis Bayeux and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

246.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Ibis Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Ibis Bayeux or Accor.

247.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Ibis Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/3/2019 | 30% deposit 498.20 EUR | 1,660.68 EUR |
| 12/5/2019 | 30% deposit 274.24 EUR | 914.30 EUR |
| 2/5/2020 | 30% deposit 1,440.07 EUR | 4,800.24 EUR |
| 2/28/2020 | Final payment 1,501.77 EUR | 1,501.77 EUR |
| 3/5/2020 | Final payment 3,874.92 EUR | 3,874.92 EUR |
| 3/5/2020 | 30% deposit 1,321.11 EUR | 4,403.70 EUR |
| 3/10/2020 | 30% deposit 1,354.86 EUR | 4,516.20 EUR |
| **TOTAL** | | **Between 21,671.81 EUR and 10,265.17 EUR** |

248.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Ibis Bayeux and/or Accor between 10,265.17 Euros (upon information and belief, approximately $11,017.20) and 21,671.81 Euros (upon information and belief, approximately $23,259.49) within two years of the Petition Date.

249.     Each of the above-described transfers to Ibis Bayeux and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

250.     Further, each of the above-described transfers to Ibis Bayeux and/or Accor may be avoided because each of the following are met, as described in more detail herein:

a.     The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.     The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.     The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

251.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

252.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Ibis Bayeux and/or Accor.

253.     The Debtor did not receive reasonably equivalent value for the above-described transfers to Ibis Bayeux and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

254.     Even if the above-described transfers to Ibis Bayeux and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Bayeux and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XX:
## AVOIDANCE OF PREFERENTIAL TRANSFERS
## PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
### (*Against Ibis Bayeux and Accor*)

255.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

256.     This is a cause of action to avoid preferential transfers against Defendants Ibis Bayeux and Accor pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

257.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Ibis Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Ibis Bayeux or Accor.

258.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Ibis Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/5/2020 | 30% deposit<br>1,440.07 EUR | 4,800.24 EUR |
| 2/28/2020 | Final payment<br>1,501.77 EUR | 1,501.77 EUR |
| 3/5/2020 | Final payment<br>3,874.92 EUR | 3,874.92 EUR |

| 3/5/2020 | 30% deposit 1,321.11 EUR | 4,403.70 EUR |
|---|---|---|
| 3/10/2020 | 30% deposit 1,354.86 EUR | 4,516.20 EUR |
| **TOTAL** | | **Between 19,096.83 EUR and 9,492.73 EUR** |

259.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Ibis Bayeux and/or Accor between 9,492.73 Euros (upon information and belief, approximately $10,188.17) and 19,096.83 Euros (upon information and belief, approximately $20,495.86) during the 90-Day Preference Period.

260.     The above-described transfers to Ibis Bayeux and/or Accor constitute transfers of an interest in property of the Debtor.

261.     Further, the above-described transfers to Ibis Bayeux and/or Accor were made at a time when the Debtor was insolvent.

262.     The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Ibis Bayeux and/or Accor that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

263.     Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

264.     Alternatively, the above-described transfers to Ibis Bayeux and/or Accor were made on account of an antecedent debt.

265.    Ibis Bayeux and/or Accor was the initial transferee of the above-described transfers to Ibis Bayeux, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Ibis Bayeux and/or Accor were made.

266.    Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Bayeux and/or Accor were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXI:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
(*Against Ibis Styles and Accor*)

267.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

268.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Ibis Styles and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

269.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Ibis Styles.  Accordingly, upon information and belief, the transfers described herein were made to either Ibis Styles or Accor.

270.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

271.     Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Ibis Styles and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/21/2020 | 50% deposit 4,086.30 EUR | 8,172.60 EUR |
| 3/10/2020 | 50% deposit 4,204.50 EUR | 8,409 EUR |
| **TOTAL** | | **Between 16,581.60 EUR and 8,290.80 EUR** |

272.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Ibis Styles and/or Accor between 8,290.80 Euros (upon information and belief, approximately $8,898.18) and 16,581.60 Euros (upon information and belief, approximately $17,796.37) within four years of the Petition Date.

273.     The above-described transfers to Ibis Styles and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

274.     Each of the transfers to Ibis Styles and/or Accor described herein may be avoided due to the following badges of fraud:

a.      The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

b. The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c. The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d. The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

275. The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

276. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

277. Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Ibis Styles and/or Accor.

278. The Debtor did not receive reasonably equivalent value for the above-described transfers to Ibis Styles and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

279. Even if the above-described transfers to Ibis Styles and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Styles and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Styles and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXII:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Ibis Styles and Accor*)

280.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

281.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Ibis Styles and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

282.    Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Ibis Styles.  Accordingly, upon information and belief, the transfers described herein were made to either Ibis Styles or Accor.

283.    Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Ibis Styles and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/21/2020 | 50% deposit 4,086.30 EUR | 8,172.60 EUR |
| 3/10/2020 | 50% deposit 4,204.50 EUR | 8,409 EUR |
| **TOTAL** | | **Between 16,581.60 EUR and 8,290.80 EUR** |

284.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred

to Ibis Styles and/or Accor between 8,290.80 Euros (upon information and belief, approximately $8,898.18) and 16,581.60 Euros (upon information and belief, approximately $17,796.37) within two years of the Petition Date.

285.    Each of the above-described transfers to Ibis Styles and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

286.    Further, each of the above-described transfers to Ibis Styles may be avoided because each of the following are met, as described in more detail herein:

a.    The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

287.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

288.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known,

that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Ibis Styles and/or Accor.

289.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Ibis Styles and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

290.    Even if the above-described transfers to Ibis Styles and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Styles and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Styles and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

### COUNT XXIII:
### AVOIDANCE OF PREFERENTIAL TRANSFERS
### PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
### (*Against Ibis Styles and Accor*)

291.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

292.    This is a cause of action to avoid preferential transfers against Defendants Ibis Styles and Accor pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

293.    Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Ibis Styles and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/21/2020 | 50% deposit<br>4,086.30 EUR | 8,172.60 EUR |
| 3/10/2020 | 50% deposit<br>4,204.50 EUR | 8,409 EUR |
| **TOTAL** | | **Between 16,581.60 EUR and 8,290.80 EUR** |

294.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Ibis Styles and/or Accor between 8,290.80 Euros (upon information and belief, approximately $8,898.18) and 16,581.60 Euros (upon information and belief, approximately $17,796.37)  during the 90-Day Preference Period.

295.    The above-described transfers to Ibis Styles constitute transfers of an interest in property of the Debtor.

296.    Further, the above-described transfers to Ibis Styles and/or Accor were made at a time when the Debtor was insolvent.

297.    The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Ibis Styles and/or Accor that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

298.    Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

299.    Alternatively, the above-described transfers to Ibis Styles were made on account of an antecedent debt.

300.     Ibis Styles was the initial transferee of the above-described transfers to Ibis Styles, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Ibis Styles and/or Accor were made.

301.     Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Ibis Styles and Accor (i) finding that all or part of the above-described transfers from the Debtor to Ibis Styles and/or Accor were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

### COUNT XXIV:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
#### (*Against Mercure Port de Plaisance and Accor*)

302.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

303.     This is a cause of action to avoid constructive fraudulent transfers against Defendants Mercure Port de Plaisance and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

304.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Mercure Port de Plaisance.  Accordingly, upon

information and belief, the transfers described herein were made to either Mercure Port de Plaisance or Accor.

305.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

306.    Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Mercure Port de Plaisance and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 9/18/2019 | 10% deposit<br>1,329.72 EUR | 13,297.20 EUR |
| 11/28/2019 | 70% deposit<br>54,453.70 EUR | 77,791 EUR |
| 12/9/2019 | 50% deposit<br>3,761.50 EUR | 7,523 EUR |
| 12/11/2019 | 50% deposit<br>5,421.50 EUR | 10,843 EUR |
| 1/14/2020 | 50% deposit<br>4,723 EUR | 9,446 EUR |
| 1/28/2020 | 50% deposit<br>3,950 EUR | 7,900 EUR |
| 2/11/2020 | 50% deposit<br>3,313 EUR | 6,626 EUR |
| **TOTAL** | | **Between   133,426.20   EUR and 76,952.42 EUR** |

307.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Mercure Port de Plaisance and/or Accor between 76,952.42 Euros (upon information and belief, approximately $82,589.95) and 133,426.20 Euros (upon information and belief, approximately $143,201.00) within four years of the Petition Date.

308.    The above-described transfers to Mercure Port de Plaisance and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

309.    Each of the transfers to Mercure Port de Plaisance and/or Accor described herein may be avoided due to the following badges of fraud:

    a.    The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

    b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

    c.    The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

    d.    The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

310.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

311.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

312.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Mercure Port de Plaisance and/or Accor.

313. The Debtor did not receive reasonably equivalent value for the above-described transfers to Mercure Port de Plaisance and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

314. Even if the above-described transfers to Mercure Port de Plaisance and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Mercure Port de Plaisance and Accor (i) finding that all or part of the above-described transfers from the Debtor to Mercure Port de Plaisance and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXV:
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (*Against Mercure Port de Plaisance and Accor*)

315. The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

316. This is a cause of action to avoid constructive fraudulent transfers against Defendants Mercure Port de Plaisance and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

317. Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Mercure Port de Plaisance. Accordingly, upon information and belief, the transfers described herein were made to either Mercure Port de Plaisance or Accor.

318.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Mercure Port de Plaisance and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 9/18/2019 | 10% deposit<br>1,329.72 EUR | 13,297.20 EUR |
| 11/28/2019 | 70% deposit<br>54,453.70 EUR | 77,791 EUR |
| 12/9/2019 | 50% deposit<br>3,761.50 EUR | 7,523 EUR |
| 12/11/2019 | 50% deposit<br>5,421.50 EUR | 10,843 EUR |
| 1/14/2020 | 50% deposit<br>4,723 EUR | 9,446 EUR |
| 1/28/2020 | 50% deposit<br>3,950 EUR | 7,900 EUR |
| 2/11/2020 | 50% deposit<br>3,313 EUR | 6,626 EUR |
| **TOTAL** | | **Between 133,426.20 EUR and 76,952.42 EUR** |

319.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Mercure Port de Plaisance and/or Accor between 76,952.42 Euros (upon information and belief, approximately $82,589.95) and 133,426.20 Euros (upon information and belief, approximately $143,201.00) within two years of the Petition Date.

320.     Each of the above-described transfers to Mercure Port de Plaisance and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

321.     Further, each of the above-described transfers to Mercure Port de Plaisance and/or Accor may be avoided because each of the following are met, as described in more detail herein:

a.     The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.      The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.      The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

322.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

323.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Mercure Port de Plaisance and/or Accor.

324.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Mercure Port de Plaisance and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

325.    Even if the above-described transfers to Mercure Port de Plaisance and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Mercure Port de Plaisance and Accor (i) finding that all or part

of the above-described transfers from the Debtor to Mercure Port de Plaisance and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXVI:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO**
**11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES**
(*Against Mercure Omaha Beach and Accor*)

326.   The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

327.   This is a cause of action to avoid constructive fraudulent transfers against Defendants Mercure Omaha Beach and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

328.   Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Mercure Omaha Beach.   Accordingly, upon information and belief, the transfers described herein were made to either Mercure Omaha Beach or Accor.

329.   Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

330.   Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Mercure Omaha Beach and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/5/2019 | 30% deposit 960 EUR | 3,200 EUR |
| 1/8/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 1/17/2020 | 30% deposit 960 EUR | 3,200 EUR |

| 1/28/2020 | 30% deposit<br>960 EUR | 3,200 EUR |
|---|---|---|
| 2/11/2020 | 30% deposit<br>960 EUR | 3,200 EUR |
| 2/14/2020 | 30% deposit<br>960 EUR | 3,200 EUR |
| 2/21/2020 | 30% deposit<br>960 EUR | 3,200 EUR |
| 2/25/2020 | 1,792 EUR | 1,792 EUR |
| 2/25/2020 | Final balance<br>7,454.40 EUR | 7,454.40 EUR |
| 3/9/2020 | Final payment<br>8,044 EUR | 8,044 EUR |
| **TOTAL** | | **Between 39,690.40 EUR and 24,010.40 EUR** |

331.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Mercure Omaha Beach and/or Accor between 24,010.40 Euros (upon information and belief, approximately $25,769.40) and 39,690.40 Euros (upon information and belief, approximately $42,598.12) within four years of the Petition Date.

332.     The above-described transfers to Mercure Omaha Beach and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

333.     Each of the transfers to Mercure Omaha Beach and/or Accor described herein may be avoided due to the following badges of fraud:

      a.     The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

      b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.     The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.     The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

334.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

335.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

336.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Mercure Omaha Beach and/or Accor.

337.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Mercure Omaha Beach and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

338.    Even if the above-described transfers to Mercure Omaha Beach and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Mercure Omaha Beach and Accor (i) finding that all or part of the above-described transfers from the Debtor to Mercure Omaha Beach and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXVII:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Mercure Omaha Beach and Accor*)

339.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

340.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Mercure Omaha Beach and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

341.    Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Mercure Omaha Beach.   Accordingly, upon information and belief, the transfers described herein were made to either Mercure Omaha Beach or Accor.

342.    Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Mercure Omaha Beach and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/5/2019 | 30% deposit<br>960 EUR | 3,200 EUR |
| 1/8/2020 | 30% deposit<br>960 EUR | 3,200 EUR |
| 1/17/2020 | 30% deposit<br>960 EUR | 3,200 EUR |

| 1/28/2020 | 30% deposit 960 EUR | 3,200 EUR |
|---|---|---|
| 2/11/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/14/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/21/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/25/2020 | 1,792 EUR | 1,792 EUR |
| 2/25/2020 | Final balance 7,454.40 EUR | 7,454.40 EUR |
| 3/9/2020 | Final payment 8,044 EUR | 8,044 EUR |
| **TOTAL** | | **Between 39,690.40 EUR and 24,010.40 EUR** |

343.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Mercure Omaha Beach and/or Accor between 24,010.40 Euros (upon information and belief, approximately $25,769.40) and 39,690.40 Euros (upon information and belief, approximately $42,598.12) within two years of the Petition Date.

344.    Each of the above-described transfers to Mercure Omaha Beach and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

345.    Further, each of the above-described transfers to Mercure Omaha Beach and/or Accor may be avoided because each of the following are met, as described in more detail herein:

    a.    The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

    b.    The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.     The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.     The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

346.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

347.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Mercure Omaha Beach and/or Accor.

348.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Mercure Omaha Beach and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

349.    Even if the above-described transfers to Mercure Omaha Beach and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Mercure Omaha Beach and Accor (i) finding that all or part of the above-described transfers from the Debtor to Mercure Omaha Beach and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's

bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXVIII:
## AVOIDANCE OF PREFERENTIAL TRANSFERS
## PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
### (*Against Mercure Omaha Beach and Accor*)

350.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

351.     This is a cause of action to avoid preferential transfers against Defendants Mercure Omaha Beach and Accor pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

352.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Mercure Omaha Beach.   Accordingly, upon information and belief, the transfers described herein were made to either Mercure Omaha Beach or Accor.

353.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Mercure Omaha Beach and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/11/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/14/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/21/2020 | 30% deposit 960 EUR | 3,200 EUR |
| 2/25/2020 | 1,792 EUR | 1,792 EUR |
| 2/25/2020 | Final balance 7,454.40 EUR | 7,454.40 EUR |
| 3/9/2020 | Final payment 8,044 EUR | 8,044 EUR |
| **TOTAL** | | **Between    26,890.40    EUR and20,170.40 EUR** |

354.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Mercure Omaha Beach and/or Accor between 20,170.40 Euros (upon information and belief, approximately $21,648.08) and 26,890.40 Euros (upon information and belief, approximately $28,860.39) during the 90-Day Preference Period.

355.     The above-described transfers to Mercure Omaha Beach and/or Accor constitute transfers of an interest in property of the Debtor.

356.     Further, the above-described transfers to Mercure Omaha Beach and/or Accor were made at a time when the Debtor was insolvent.

357.     The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Mercure Omaha Beach and/or Accor that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

358.     Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

359.     Alternatively, the above-described transfers to Mercure Omaha Beach and/or Accor were made on account of an antecedent debt.

360.     Mercure Omaha Beach and/or Accor was the initial transferee of the above-described transfers to Mercure Omaha Beach and/or Accor, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Mercure Omaha Beach and/or Accor were made.

361.     Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein

and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Mercure Omaha Beach and Accor (i) finding that all or part of the above-described transfers from the Debtor to Mercure Omaha Beach and/or Accor were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

### COUNT XXIX:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
### (*Against Novatel Bayeux and Accor*)

362.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

363.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Novatel Bayeux and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

364.    Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Novatel Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Novatel Bayeux or Accor.

365.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

366.    Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Novatel Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/19/2019 | 10% deposit 118.32 EUR | 1,183.20 EUR |
| 1/10/2020 | 10% deposit 118.32 EUR | 1,183.20 EUR |
| 1/10/2020 | 10% deposit 273.04 EUR | 2,730.40 EUR |
| 1/17/2020 | 10% deposit 253.64 EUR | 2,536.40 EUR |
| 1/21/2020 | 40% deposit 1,893.12 EUR | 4,732.80 EUR |
| 2/4/2020 | 40% deposit 4,368.64 EUR | 10,921.60 EUR |
| 2/10/2020 | 10% deposit 226.96 EUR | 2,269.60 EUR |
| 2/14/2020 | 40% deposit 1,893.12 EUR | 4,732.80 EUR |
| 2/18/2020 | 40% deposit 3,674.24 EUR | 9,185.60 EUR |
| 2/18/2020 | 10% deposit 166.82 EUR | 1,668.21 EUR |
| 2/28/2020 | 10% deposit 118 EUR | 1,180 EUR |
| 3/3/2020 | Final payment 3,340.80 EUR | 3,340.80 EUR |
| 3/5/2020 | 10% deposit 87.34 EUR | 873.42 EUR |
| 3/10/2020 | 40% deposit 3,631.36 EUR | 9,078.40 EUR |
| 3/10/2020 | 10% deposit 137.92 EUR | 1,379.20 EUR |
| 3/10/2020 | 10% deposit 128.12 EUR | 1,281.20 EUR |
| **TOTAL** | | **Between 58,276.83 EUR and 20,429.76 EUR** |

367.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Novatel Bayeux and/or Accor between 20,429.76 Euros (upon information and belief, approximately $21,926.44) and 62,546.19 Euros (upon information and belief, approximately $42,598.12) within four years of the Petition Date.

368.     The above-described transfers to Novatel Bayeux and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

369.     Each of the transfers to Novatel Bayeux and/or Accor described herein may be avoided due to the following badges of fraud:

    a.     The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

    b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

    c.     The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

    d.     The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

370.     The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

371.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

372.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known,

that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Novatel Bayeux and/or Accor.

373.   The Debtor did not receive reasonably equivalent value for the above-described transfers to Novatel Bayeux and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

374.   Even if the above-described transfers to Novatel Bayeux and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Novatel Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Novatel Bayeux and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXX:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Novatel Bayeux and Accor*)

375.   The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

376.   This is a cause of action to avoid constructive fraudulent transfers against Defendants Novatel Bayeux and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

377.    Upon information and belief, Accor is the parent company of and/or otherwise operates and/or manages Defendant Novatel Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Novatel Bayeux or Accor.

378.    Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Novatel Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 12/19/2019 | 10% deposit 118.32 EUR | 1,183.20 EUR |
| 1/10/2020 | 10% deposit 118.32 EUR | 1,183.20 EUR |
| 1/10/2020 | 10% deposit 273.04 EUR | 2,730.40 EUR |
| 1/17/2020 | 10% deposit 253.64 EUR | 2,536.40 EUR |
| 1/21/2020 | 40% deposit 1,893.12 EUR | 4,732.80 EUR |
| 2/4/2020 | 40% deposit 4,368.64 EUR | 10,921.60 EUR |
| 2/10/2020 | 10% deposit 226.96 EUR | 2,269.60 EUR |
| 2/14/2020 | 40% deposit 1,893.12 EUR | 4,732.80 EUR |
| 2/18/2020 | 40% deposit 3,674.24 EUR | 9,185.60 EUR |
| 2/18/2020 | 10% deposit 166.82 EUR | 1,668.21 EUR |
| 2/28/2020 | 10% deposit 118 EUR | 1,180 EUR |
| 3/3/2020 | Final payment 3,340.80 EUR | 3,340.80 EUR |
| 3/5/2020 | 10% deposit 87.34 EUR | 873.42 EUR |
| 3/10/2020 | 40% deposit 3,631.36 EUR | 9,078.40 EUR |
| 3/10/2020 | 10% deposit 137.92 EUR | 1,379.20 EUR |
| 3/10/2020 | 10% deposit 128.12 EUR | 1,281.20 EUR |
| **TOTAL** | | **Between 58,276.83 EUR and 20,429.76 EUR** |

379.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Novatel Bayeux and/or Accor between 20,429.76 Euros (upon information and belief, approximately $21,926.44) and 62,546.19 Euros (upon information and belief, approximately $42,598.12) within two years of the Petition Date.

380.     Each of the above-described transfers to Novatel Bayeux and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

381.     Further, each of the above-described transfers to Novatel Bayeux and/or Accor may be avoided because each of the following are met, as described in more detail herein:

a.     The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c.     The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.     The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

382.     Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

383.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Novatel Bayeux and/or Accor.

384.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Novatel Bayeux and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

385.    Even if the above-described transfers to Novatel Bayeux and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Novatel Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Novatel Bayeux and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

### COUNT XXXI:
### AVOIDANCE OF PREFERENTIAL TRANSFERS
### PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
#### (*Against Novatel Bayeux and Accor*)

386.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

387.    This is a cause of action to avoid preferential transfers against Defendants Novatel Bayeux and Accor pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

388.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Novatel Bayeux.  Accordingly, upon information and belief, the transfers described herein were made to either Novatel Bayeux or Accor.

389.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfers were made by the Debtor to or for the benefit of Novatel Bayeux and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 2/4/2020 | 40% deposit 4,368.64 EUR | 10,921.60 EUR |
| 2/10/2020 | 10% deposit 226.96 EUR | 2,269.60 EUR |
| 2/14/2020 | 40% deposit 1,893.12 EUR | 4,732.80 EUR |
| 2/18/2020 | 40% deposit 3,674.24 EUR | 9,185.60 EUR |
| 2/18/2020 | 10% deposit 166.82 EUR | 1,668.21 EUR |
| 2/28/2020 | 10% deposit 118 EUR | 1,180 EUR |
| 3/3/2020 | Final payment 3,340.80 EUR | 3,340.80 EUR |
| 3/5/2020 | 10% deposit 87.34 EUR | 873.42 EUR |
| 3/10/2020 | 40% deposit 3,631.36 EUR | 9,078.40 EUR |
| 3/10/2020 | 10% deposit 137.92 EUR | 1,379.20 EUR |
| 3/10/2020 | 10% deposit 128.12 EUR | 1,281.20 EUR |
| **TOTAL** | | **Between 45,910.83 EUR and 17,773.32 EUR** |

390.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Novatel Bayeux and/or Accor between 17,773.32 Euros (upon information and belief,

approximately $19,075.39) and 45,910.83 Euros (upon information and belief, approximately $49,274.26) during the 90-Day Preference Period.

391.    The above-described transfers to Novatel Bayeux and/or Accor constitute transfers of an interest in property of the Debtor.

392.    Further, the above-described transfers to Novatel Bayeux and/or Accor were made at a time when the Debtor was insolvent.

393.    The Trustee is entitled to the presumption of insolvency for each of the above-described transfers to Novatel Bayeux and/or Accor that were made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

394.    Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

395.    Alternatively, the above-described transfers to Novatel Bayeux and/or Accor were made on account of an antecedent debt.

396.    Novatel Bayeux and/or Accor was the initial transferee of the above-described transfers to Novatel Bayeux and/or Accor, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfers to Novatel Bayeux and/or Accor were made.

397.    Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Novatel Bayeux and Accor (i) finding that all or part of the above-described transfers from the Debtor to Novatel Bayeux and/or Accor were preferential transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXXII:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
#### (*Against Outrigger Reef Waikiki and KSL Resorts*)

398.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

399.    This a cause of action to avoid constructive fraudulent transfers against Defendants Outrigger Reef Waikiki and KSL Resorts pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

400.    Upon information and belief, Defendant KSL Resorts is the parent company of and/or otherwise operates and/or manages Defendant Outrigger Reef Waikiki.  Accordingly, upon information and belief, the transfers described herein were made to either Outrigger Reef Waikiki or KSL Resorts.

401.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

402.    Upon information and belief, within four years of the Petition Date, the following transfer was made by the Debtor to Outrigger Reef Waikiki and/or KSL Resorts:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 6/27/2019 | 30% deposit $14,971.20 USD | $49,409 USD |
| **TOTAL** | | **Between $49,409 USD and $14,917.20 USD** |

403.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Outrigger Reef Waikiki and/or KSL Resorts between $14,917.20 and $49,409.00 within four years of the Petition Date.

404.     The above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts constitutes a transfer of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

405.     The transfer to Outrigger Reef Waikiki and/or KSL Resorts described herein may be avoided due to the following badges of fraud:

      a.     The Debtor made the transfer without receiving reasonably equivalent value for such transfer;

      b.     The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

      c.     The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

      d.     The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

406.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

407.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

408.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts.

409.    The Debtor did not receive reasonably equivalent value for the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts because the hotel accommodations purchased with the transfer were never provided to or used by the Debtor or its customers.

410.    Even if the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts is considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Outrigger Reef Waikiki and KSL Resorts (i) finding that all or part of the above-described transfer from the Debtor to Outrigger Reef Waikiki and/or KSL Resorts was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXXIII:**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**
(*Against Outrigger Reef Waikiki and KSL Resorts*)

411.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

412.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Outrigger Reef Waikiki and KSL Resorts pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

413.    Upon information about belief, Defendant KSL Resorts is the parent company of and/or otherwise operates and/or manages Defendant Outrigger Reef Waikiki.  Accordingly, upon information and belief, the transfers described herein were made either to Outrigger Reef Waikiki or KSL Resorts.

414.    Upon information and belief, within two years of the Petition Date, the following transfer was made by the Debtor to Outrigger Reef Waikiki and/or KSL Resorts:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 6/27/2019 | 30% deposit $14,971.20 USD | $49,409 USD |
| **TOTAL** | | **Between $49,409 USD and $14,917.20 USD** |

415.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Outrigger Reef Waikiki and/or KSL Resorts between $14,917.20 and $49,409.00 within two years of the Petition Date.

416. The above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

417. Further, the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts may be avoided because each of the following are met, as described in more detail herein:

    a.    The Debtor made such transfer without receiving reasonably equivalent value for such transfer;

    b.    The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

    c.    The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

    d.    The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfer would cause the Debtor to incur, debts beyond its ability to pay as they became due.

418. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

419. Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts.

420.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Outrigger Reef Waikiki because the hotel accommodations purchased with the transfer were never provided to or used by the Debtor or its customers.

421.    Even if the above-described transfer to Outrigger Reef Waikiki and/or KSL Resorts is considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Outrigger Reef Waikiki and KSL Resorts (i) finding that all or part of the above-described transfer from the Debtor to Outrigger Reef Waikiki and/or KSL Resorts was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXXIV:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
### (*Against Saigon Plaza and Accor*)

422.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

423.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Saigon Plaza and Accor pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

424.    Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Saigon Plaza.  Accordingly, upon information and belief, the transfers described herein were made to either Saigon Plaza or Accor.

425.     Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

426.     Upon information and belief, within four years of the Petition Date, the following transfers were made by the Debtor to Saigon Plaza and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 11/25/2019 | 30% deposit<br>34,178,4000 VND | 113,928,000 VND<br>(approx. $4,671.05) |
| 12/14/2019 | 30% deposit<br>$1,253.40 | $4,178 |
| 1/17/2020 | Balance<br>$4,178 USD | $4,178 USD |
| 2/11/2020 | $2,385 USD | $2,385 USD |
| **TOTAL** | | **Between approx. $15,412.05 USD and approx. $9,217.71 USD** |

427.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Saigon Plaza and/or Accor between approximately $9,217.71 and $15,412.05 within four years of the Petition Date.

428.     The above-described transfers to Saigon Plaza and/or Accor constitute transfers of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

429.     Each of the transfers to Saigon Plaza and/or Accor described herein may be avoided due to the following badges of fraud:

      a.     The Debtor made the transfers without receiving reasonably equivalent value for such transfers;

      b.     The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c. The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d. The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

430. The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

431. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

432. Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Saigon Plaza and/or Accor.

433. The Debtor did not receive reasonably equivalent value for the above-described transfers to Saigon Plaza and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

434. Even if the above-described transfers to Saigon Plaza and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Saigon Plaza and Accor (i) finding that all or part of the above-

described transfers from the Debtor to Saigon Plaza and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXXV:
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (*Against Saigon Plaza and Accor*)

435.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

436.     This is a cause of action to avoid constructive fraudulent transfers against Defendants Saigon Plaza and Accor pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

437.     Upon information and belief, Defendant Accor is the parent company of and/or otherwise operates and/or manages Defendant Saigon Plaza.  Accordingly, upon information and belief, the transfers described herein were made to either Saigon Plaza or Accor.

438.     Upon information and belief, within two years of the Petition Date, the following transfers were made by the Debtor to Saigon Plaza and/or Accor:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 11/25/2019 | 30% deposit 34,178,4000 VND | 113,928,000 VND (approx. $4,671.05) |
| 12/14/2019 | 30% deposit $1,253.40 | $4,178 |
| 1/17/2020 | Balance $4,178 USD | $4,178 USD |
| 2/11/2020 | $2,385 USD | $2,385 USD |
| **TOTAL** | | **Between approx. $15,412.05 USD and approx. $9,217.71 USD** |

439.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred

to Saigon Plaza and/or Accor between approximately $9,217.71 and $15,412.05 within two years of the Petition Date.

440. Each of the above-described transfers to Saigon Plaza and/or Accor constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

441. Further, each of the above-described transfers to Saigon Plaza and/or Accor may be avoided because each of the following are met, as described in more detail herein:

a. The Debtor made such transfers without receiving reasonably equivalent value for such transfer;

b. The transfers were made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfers;

c. The transfers were made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d. The transfers caused the Debtor to incur, or the Debtor reasonably should have believed that the transfers would cause the Debtor to incur, debts beyond its ability to pay as they became due.

442. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

443. Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known,

that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfers to Saigon Plaza and/or Accor.

444.    The Debtor did not receive reasonably equivalent value for the above-described transfers to Saigon Plaza and/or Accor because the hotel accommodations purchased with the transfers were never provided to or used by the Debtor or its customers.

445.    Even if the above-described transfers to Saigon Plaza and/or Accor are considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Saigon Plaza and Accor (i) finding that all or part of the above-described transfers from the Debtor to Saigon Plaza and/or Accor were constructive avoidable transfers; (ii) avoiding such transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXXVI:
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b)(1) AND SECTIONS 726.105 AND 726.106, FLORIDA STATUTES
### (*Against Star Inn Hotel and Choice Hotels*)

446.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

447.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Star Inn Hotel and Choice Hotels pursuant to section 544(b)(1) of the Bankruptcy Code and sections 726.105 and 726.106, Florida Statutes.

448.    Upon information and belief, Defendant Choice Hotels is the parent company of and/or otherwise operates and/or manages Defendant Star Inn Hotel.   Accordingly, upon

information and belief, the transfers described herein were made to either Star Inn Hotel or Choice Hotels.

449.    Section 544 of the Bankruptcy Code allows the Trustee to avoid fraudulent transfers that are avoidable under "other applicable law."

450.    Upon information and belief, within four years of the Petition Date, the following transfer was made by the Debtor to Star Inn Hotel and/or Choice Hotels:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/10/2020 | 100% deposit<br>17,895 EUR | 17,895 EUR |
| **TOTAL** | | **17,895 EUR** |

451.    Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Star Inn Hotel and/or Choice Hotels 17,895 Euros (upon information and belief, approximately $19,205.99) within four years of the Petition Date.

452.    The above-described transfer to Star Inn Hotel and/or Choice Hotels constitutes a transfer of assets or property of the Debtor within the meaning of section 544(b)(1) of the Bankruptcy Code and section 726.102(11) and (14), Florida Statutes.

453.    The transfer to Star Inn Hotel and/or Choice Hotels described herein may be avoided due to the following badges of fraud:

    a.    The Debtor made the transfer without receiving reasonably equivalent value for such transfer;

    b.    The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

c.      The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

d.      The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfer would cause the Debtor to incur, debts beyond its ability to pay as they became due.

454.    The Debtor was aware, or reasonably should have been aware, that with the commencement of COVID-19, inter-country travel and other restrictions would depress the majority of its revenue deriving activities in late 2019 and in 2020.

455.    Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

456.    Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfer to Star Inn Hotel and/or Choice Hotels.

457.    The Debtor did not receive reasonably equivalent value for the above-described transfer to Star Inn Hotel and/or Choice Hotels because the hotel accommodations purchased with the transfer were never provided to or used by the Debtor or its customers.

458.    Even if the above-described transfer to Star Inn Hotel and/or Choice Hotels is considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Star Inn Hotel and Choice Hotels (i) finding that all or part of the above-described transfer from the Debtor to Star Inn Hotel and/or Choice Hotels was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 544(b)(1); and (iii) awarding any and all further relief as is necessary and just.

### COUNT XXXVII:
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
#### (*Against Star Inn Hotel and Choice Hotels*)

459.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

460.    This is a cause of action to avoid constructive fraudulent transfers against Defendants Star Inn Hotel and Choice Hotels pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

461.    Upon information and belief, Defendant Choice Hotels is the parent company of and/or otherwise operates and/or manages Defendant Star Inn Hotel.   Accordingly, upon information and belief, the transfers described herein were made to either Star Inn Hotel or Choice Hotels.

462.    Upon information and belief, within two years of the Petition Date, the following transfer was made by the Debtor to Star Inn Hotel and/or Choice Hotels:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/10/2020 | 100% deposit 17,895 EUR | 17,895 EUR |
| **TOTAL** | | **17,895 EUR** |

463. Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Star Inn Hotel and/or Choice Hotels 17,895 Euros (upon information and belief, approximately $19,205.99) within two years of the Petition Date.

464. The above-described transfer to Star Inn Hotel and/or Choice Hotels constitutes a transfer of assets or property of the Debtor within the meaning of section 541 of the Bankruptcy Code.

465. Further, the above-described transfer to Star Inn Hotel and/or Choice Hotels may be avoided because each of the following are met, as described in more detail herein:

    a.    The Debtor made such transfer without receiving reasonably equivalent value for such transfer;

    b.    The transfer was made while the Debtor was insolvent or the Debtor became insolvent as a result of such transfer;

    c.    The transfer was made while the Debtor was engaged in business for which the remaining assets of the Debtor were unreasonably small in relation to the business; and

    d.    The transfer caused the Debtor to incur, or the Debtor reasonably should have believed that the transfer would cause the Debtor to incur, debts beyond its ability to pay as they became due.

466. Indeed, the Debtor's principal withdrew substantial sums of cash from the Debtor in or around that time, evidencing his knowledge that the Debtor's business operations and solvency would be, and were, negatively impacted by COVID-19 in 2019 and 2020.

467.     Additionally, the Debtor's revenue decreased substantially in the later months of 2019 and into 2020, further evidencing that the Debtor knew, or reasonably should have known, that the Debtor's business operations and solvency were negatively impacted by COVID-19 at the time the Debtor made the above-described transfer to Star Inn Hotel and/or Choice Hotels.

468.     The Debtor did not receive reasonably equivalent value for the above-described transfer to Star Inn Hotel and/or Choice Hotels because the hotel accommodations purchased with the transfer were never provided to or used by the Debtor or its customers.

469.     Even if the above-described transfer to Star Inn Hotel and/or Choice Hotels is considered as having value, such questionable value was not reasonably equivalent to the monies transferred.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Star Inn Hotel and Choice Hotels (i) finding that all or part of the above-described transfer from the Debtor to Star Inn Hotel and/or Choice Hotels was a constructive avoidable transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §548(a)(1)(B); and (iii) awarding any and all further relief as is necessary and just.

## COUNT XXXVIII:
## AVOIDANCE OF PREFERENTIAL TRANSFERS
## PURSUANT TO 11 U.S.C. § 547(b)(4)(A)
### (*Against Star Inn Hotel and Choice Hotels*)

470.     The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

471.     This is a cause of action to avoid preferential transfers against Defendants Star Inn Hotel and Choice Hotels pursuant to section 547(b)(4)(A) of the Bankruptcy Code.

472.     Upon information and belief, Defendant Choice Hotels is the parent company of and/or otherwise operates and/or manages Defendant Star Inn Hotel.   Accordingly, upon information and belief, the transfers described herein were made to either Star Inn Hotel or Choice Hotels.

473.     Upon information and belief, in the 90 days preceding the Petition Date (the "**90-Day Preference Period**"), the following transfer was made by the Debtor to or for the benefit of Star Inn Hotel and/or Choice Hotels:

| Date of Transfer | Amount of Transfer (Deposit, Etc.) | Total Amount Payable |
|---|---|---|
| 3/10/2020 | 100% deposit 17,895 EUR | 17,895 EUR |
| **TOTAL** | | **17,895 EUR** |

474.     Upon information and belief, the Debtor, either directly or indirectly through its Related Entities which, upon information and belief, are business units of the Debtor, transferred to Star Inn Hotel and/or Choice Hotels 17,895 Euros (upon information and belief, approximately $19,205.99) during the 90-Day Preference Period.

475.     The above-described transfer to Star Inn Hotel and/or Choice Hotels constitutes a transfer of an interest in property of the Debtor.

476.     Further, the above-described transfer to Star Inn Hotel and/or Choice Hotels was made at a time when the Debtor was insolvent.

477.     The Trustee is entitled to the presumption of insolvency for the above-described transfer to Star Inn Hotel and/or Choice Hotels that was made during the 90-Day Preference Period pursuant to section 547(f) of the Bankruptcy Code.

478.    Furthermore, the Debtor was insolvent long before the 90-Day Preference Period due to the Debtor's principal's withdrawals, and transfers to other affiliated businesses, of substantial sums of cash, depleting and draining the Debtor's assets.

479.    Alternatively, the above-described transfer to Star Inn Hotel and/or Choice Hotels was made on account of an antecedent debt.

480.    Star Inn Hotel and/or Choice Hotels was the initial transferee of the above-described transfer to Star Inn Hotel and/or Choice Hotels, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the above-described transfer to Star Inn Hotel and/or Choice Hotels was made.

481.    Based upon the Trustee's review of information and diligence available from the discovery received to date, the Trustee conducted a good faith analysis of the claim brought herein and has not identified any defenses.  The Trustee's investigation and discovery are in their early stages and remain ongoing.  The Trustee will continue to evaluate potential defenses to these claims as his investigation proceeds.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants Star Inn Hotel and Choice Hotels (i) finding that all or part of the above-described transfer from the Debtor to Star Inn Hotel and/or Choice Hotels was a preferential transfer; (ii) avoiding such transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547; and (iii) awarding any and all further relief as is necessary and just.

**COUNT XXXIX:**
**RECOVERY OF AVOIDED TRANSFERS**
**PURSUANT TO 11 U.S.C. § 550(A)(1)**
(*Against All Defendants*)

482.    The Trustee re-alleges and incorporates by reference the allegations of paragraphs 1-38 of this Complaint as though fully set forth herein.

483.    This is a cause of action to recover the various actual or constructively fraudulent transfers and preferential transfers alleged in Counts I through XXXVIII of this Complaint (individually and collectively, the "**Avoidable Transfers**"), or their value, pursuant to section 550(a) of the Bankruptcy Code.

484.    To the extent that the Avoidable Transfers are avoided as requested in this Complaint, section 550 of the Bankruptcy Code authorizes the Trustee to recover the transferred property, or its value, from the immediate transferee or the entity for whose benefit such transfer was made, or from any intermediate or mediate transferee.

485.    The Avoidable Transfers *sub judice* are preferential or other constructive or actual fraudulent transfers that may be recovered for the benefit of the Debtor's bankruptcy estate.

486.    As alleged herein, the Defendants are entities for whose benefit the Avoidable Transfers were made, and as such, the Avoidable Transfers are avoidable pursuant to sections 544, 547, and 548 of the Bankruptcy Code.

487.    The Defendants were the initial or mediate transferees of the Avoidable Transfers, and the Avoidable Transfers were made to or for the Defendants' benefit.

WHEREFORE, the Trustee respectfully requests that this Court (i) enter judgment in favor of the Trustee and against the Defendants; (ii) award damages to the Trustee and Debtor and against the Defendants in an amount to be proven at trial, along with interest; and (iii) grant any and all further relief as is necessary and just.

DATED: November 3, 2023.             Respectfully submitted,

*/s/ Steven M. Berman*
Steven M. Berman, Esq.
Fla. Bar No. 856290
Elizabeth R. Brusa, Esq.
Fla. Bar No. 125655
**SHUMAKER, LOOP & KENDRICK, LLP**
101 E. Kennedy Blvd., Ste. 2800
Tampa, Florida 33602
P: (813) 229-7600 | F: (813) 229-1660
Primary email: sberman@shumaker.com
Secondary email: bgasaway@shumaker.com
*Counsel for Douglas N. Menchise, Chapter 7 Trustee*